## Smith v. Smith

*Harry B. Crytzer*, for libellant.

RICE, P. J., June 18, 1946.—In this divorce action the libel sets forth indignities as the cause of complaint and avers that respondent is non compos mentis, having been so declared by this court on March 8, 1938, and having been confined ever since in the Harrisburg State Hospital and the Veterans' Hospital at Coatesville, Pa. A subpœna was awarded on August 25, 1945, returnable on the first Monday of October 1945, and on October 2nd, the day after the return day, the subpœna was returned non est inventus. On August 27, 1945, libellant made application to the court for the appointment of a guardian ad litem of respondent as an incompetent party, and in proceedings intended to be in accordance with the procedure set forth in Pa. R. C. P. 2051-75, governing incompetents as parties, a member of the bar of the county was, on

October 19, 1945, appointed as the guardian ad litem of respondent. On October 23, 1945, an alias subpœna was issued, returnable on the first Monday of December 1945, and on October 31, 1945, the sheriff made return, on oath, that, on October 29, 1945, he served the alias subpœna "on Ralph K. Smith, by handing to C. H. Smiley, guardian ad litem of Ralph K. Smith, a true and attested copy of the within subpœna and making known to him the contents thereof". The case then proceeded to the appointment of a master, a hearing before the master, the taking of testimony before the master, and the presentation of the report of the master to the court, in which the master concludes that libellant is entitled to a decree of divorce. The regularity of the service of the alias subpœna is one of the questions for determination.

Section 30 of the Divorce Law of May 22, 1929, P. L. 1237, as amended by the Act of May 18, 1937, P. L. 719, provides, inter alia:

"In cases where the respondent is a hopeless lunatic, or non compos mentis, the service of the subpœna in divorce shall be made as provided in this act, but such service shall be made upon the committee of such lunatic or person non compos mentis."

In Collins v. Collins, 86 Pa. Superior Ct. 43, it was decided that a guardian appointed for an insane or weak-minded person under the Act of May 28, 1907, P. L. 292, is not a guardian of the person of his ward and does not have all the power and authority of a committee in lunacy and that service of a subpœna in divorce on such guardian is defective and irregular. See also Hauger v. Hauger, 22 D. & C. 51, holding that a subpœna may not be served on a guardian ad litem. Both of these cases were decided before the promulgation of the Pa. R. C. P. 2051-75 relating to incompetents as parties. These rules and Rules 2026-50 relating to minors as parties define "action", when used in the rules, as meaning ". . . any civil

action or proceeding at law or in equity brought in or appealed to any court of record which is subject to these rules". The court of common pleas of any county is subject to these two sets of rules, and it has been held in Potter v. Potter, 43 D. & C. 413; Shoff v. Shoff, 46 D. & C. 314, and Hershey v. Hershey, 51 D. & C. 6, that actions of divorce are subject to these two sets of rules. Pa. R. C. P. 2055 provides:

"(a) When an incompetent is a defendant, original process may be served on him in the manner prescribed for the service of like process on a competent defendant, or may be served on his guardian appointed by a court of competent jurisdiction within this Commonwealth."

Section 30 of the Divorce Law of 1929 is so inconsistent with this last quoted rule as to be deemed to be suspended by Rule 2075, and we must determine, from a consideration of Rule 2055, the person who may be served with the subpœna in divorce when respondent is incompetent. The latter rule says that the subpœna may be served on defendant or his guardian appointed by a court of competent jurisdiction. In Rule 2051, "guardian", except where the context otherwise indicates, is defined as meaning "the guardian, committee or other fiduciary appointed by a court of competent jurisdiction for the person or estate of an habitual drunkard, a weak-minded person or a person of unsound mind". The words "a court of competent jurisdiction" in both Rules 2051 and 2055 relate to a particular county court authorized by statute to appoint a committee in lunacy or a guardian for an incompetent person, and the jurisdiction of such court depends on the residence or domicile of the incompetent person. Also, a guardian ad litem is not the guardian of a person or the estate of the ward. In paragraph (b) it is provided that a pleading or other paper may be served on an incompetent's guardian or guardian

ad litem, and this specification of what may be served on a guardian ad litem excludes original process. In the Goodrich-Amram commentary on Rule 2050-53 are mentioned different fiduciaries included within the meaning of the word "guardian", but guardian ad litem is not mentioned. Our conclusion is, therefore, that section 30 of the Divorce Law of 1929 is suspended by Pa. R. C. P. 2075 insofar as said section provides that service of the subpœna must be made on the committee of the lunatic respondent and that, according to Pa. R. C. P. 2055, which determines the person upon whom the subpœna may be served, service of the subpœna on the guardian ad litem of the lunatic respondent is unauthorized and irregular.

Another question is whether the provisions of section 53 of the Divorce Law of 1929 have been complied with. That section says:

"Upon the hearing of any case before the court, a master or jury, where the petition or libel sets forth that the respondent is a lunatic, the question of lunacy shall be fully established by expert testimony, together with every other matter of fact that is affirmed by one party and denied by the other. No divorce shall be granted to the libellant, in any such case, unless it be proved beyond a reasonable doubt that the respondent is hopelessly insane, but, if any respondent has been for 10 or more years an inmate of any asylum for the insane, it shall be conclusive proof of hopeless insanity."

This section is, as Judge McCluskey said of it in Frederick v. Frederick, 47 D. & C. 265, somewhat perplexing. It is also, in our opinion, unduly burdensome on libellant in requiring that the court refuse him a divorce unless the insanity of respondent is proved, by expert testimony and beyond a reasonable doubt, to be hopeless. If libellant establishes his ground for divorce by evidence of the quality and quantity required and if the rights of an incompetent respondent are guarded by a guardian ad litem appointed by the court, why

should libellant be refused a divorce if the insanity of respondent be temporary or with lucid intervals? If respondent be hopelessly insane, there is a great chance that his insanity extends back over the period of time in which the acts of respondent took place that gave rise to the cause for the divorce alleged in the libel and, if so, that would defeat the right of libellant to a divorce in certain cases. To procure a divorce libellant must prove the hopeless insanity of the respondent, and then he may be defeated by that very condition of respondent. This section says: "the question of lunacy shall be fully established by expert testimony, together with every other matter of fact. . . ." The logical location of the words after the word "testimony" is immediately after the word "lunacy", and rewriting the sentence accordingly it would read as follows: "The question of lunacy, together with every other matter of fact . . . shall be fully established by expert testimony." A strict application of this requirement would necessitate the proof of desertion, indignities, cruelty, adultery and other causes for divorce by expert testimony, which is a situation that is contrary to the court decisions and all other statutes relating to divorce. This construction is an absurdity, but it is really no more absurd than to require libellant to prove the hopeless insanity of respondent. This section is copied, with some changes of language, from clauses B and C, section 1, of the Act of April 18, 1905, P. L. 211, which amends section 8 of the Act of April 13, 1843, P. L. 233. The latter act was intended to provide the procedure in a case where a lunatic wife had a cause for divorce against her husband and permitted a relative of the wife to make the affidavit to the libel and present it to the court, and it had no reference to actions against lunatic spouses. The Act of 1905, however, applies mostly, if not altogether, to actions against lunatic spouses, and it was so ambiguously drafted that many

lawyers and judges believed it authorized divorces on the ground of the insanity of respondents and numerous divorces for insanity were granted as a result. See Baughman v. Baughman, 34 Pa. Superior Court 271, Mintz v. Mintz, 83 Pa. Superior Ct. 85, Validating Act of May 3, 1909, P. L. 390, Validating Act of May 13, 1927, P. L. 991. But the court has no authority or opportunity to construe this section, since it is very clear that, where the libel alleges the insanity of respondent, it must be proved, beyond a reasonable doubt, by expert testimony that respondent is hopelessly insane. However, we do not believe that the cause for the divorce must be proved by expert testimony.

The only witness as to the mental condition of respondent, excepting some testimony by libellant herself, was Dr. R. R. Stoner. The qualifications of Dr. Stoner as an expert on mental diseases were admitted by the master. The record does not show that the guardian ad litem admitted the qualifications, and it is questionable whether such a guardian has the authority to make such an admission, as he is supposed to combat the efforts of libellant to get a divorce and not to ease the way for him. In a court trial, a party has a right to waive proof of the qualifications of an expert witness for his adversary, but the trial judge has no such right. It is the function of the trial judge to decide whether a witness has qualified as an expert, but he may not waive proof of his qualifications. Similarly, a master has no authority to admit the qualifications of a witness as an expert. The fact that Dr. Stoner is a doctor of medicine is not enough to class him as an expert on mental diseases. He should have proved his education and experience in mental diseases. He examined respondent twice in 1938, once as one of a commission of three appointed under the Mental Health Act of 1923, and found that respondent was abusive to his wife, went into violent rages without provocation, and had hallucinations that people were persecuting

him and following him in the evenings and poisoning his cattle. Libellant testified that respondent abused her, became very angry with her and their children, and was under the delusion that she was unfaithful to him, and these were some of the indignities she complained of. Thus, there is a question whether his mental condition did not extend back for some years and include the period during which the alleged indignities were committed. Dr. Stoner did not testify that, in his opinion, respondent was hopelessly insane, only that he was mentally ill. The commitment of the respondent to a mental institution was not an adjudication of his insanity for any purpose except the commitment: Ryman's Case, 139 Pa. Superior Ct. 212. And the respondent's being confined in mental institutions for less than 10 years did not, in any way, take the place of expert testimony, according to our understanding of section 53. Hence, the testimony is not sufficient to convince us that respondent was, in 1946, hopelessly insane, and a decree of divorce would have to be refused even if the subpœna had been properly served. However, the insufficiency of the testimony may, at another stage of the case, be supplied by the testimony of an expert on mental diseases at the mental institution where respondent has been confined in recent years. The testimony of a general practitioner, especially one who has little chance to observe respondent at different times and under different conditions, will be of little value. By expert testimony is meant, we believe, the testimony of a physician who makes a specialty of mental diseases. We say this as a warning of what will be required if the case comes before the court again.

### Decree

And now, June 18, 1946, the service of the alias subpœna is set aside, the appointment of the master is revoked, and all proceedings before him are set aside.